In re JOHNS–MANVILLE CORP., et al., Debtors.

The HOSPITAL AND UNIVERSITY PROPERTY DAMAGE CLAIMANTS, Appellants,

v.

JOHNS–MANVILLE CORPORATION, et al., Appellees.

No. 1851, Docket 93–5022.

United States Court of Appeals, Second Circuit.

Argued Aug. 9, 1993.

Decided Oct. 4, 1993.

Anthony C. Valiulis, Chicago, IL (Charles F. Vihon, Scott N. Schreiber, Much Shelist Freed Denenberg & Ament, P.C., Chicago, IL; Salomon, Green & Ostrow, P.C., New York City, of counsel), for appellants.

Allen G. Kadish, New York City (Herbert S. Edelman, Bruce F. Rubin, Kaye, Scholer, Fierman, Hays & Handler, Davis Polk & Wardwell, of counsel), for appellees.

Before: WINTER, MINER and WALKER, Circuit Judges.

MINER, Circuit Judge:

Appellants, The Hospital and University Property Damage Claimants (the "Hospitals"),[1] are hospitals that have sustained property damage arising from the removal of asbestos that was sold or manufactured by Johns–Manville Corporation and related companies, debtors in this chapter 11 proceeding and appellees here (collectively, "Manville"). On January 31, 1985, the Hospitals filed a claim against Manville for property damage arising from the removal of asbestos sold or produced by Manville. Manville moved to disallow and expunge the Hospitals' claim on December 15, 1988, and, in an order dated March 19, 1992, the bankruptcy court (Lifland, *C.B.J.*) granted the motion upon a finding that the claim improperly was filed as a class claim. The district court (McKenna, *J.*) affirmed the bankruptcy court's order on March 4, 1993, after conclud

---

**1.** The University Property Damage claimants have submitted no briefs and made no arguments in this appeal.

ing that the bankruptcy court had jurisdiction to hear Manville's motion and that the bankruptcy court's decision to disallow the Hospitals' class claim was not an abuse of discretion.

On appeal, the Hospitals argue that: (1) the bankruptcy court lacked jurisdiction to entertain Manville's motion; (2) Manville's motion was not timely filed; (3) Manville did not have standing to make a motion to disallow and expunge their claim; (4) their claim was not a class claim; (5) even if their claim was a class claim, it should have been allowed; (6) if their claim was a properly disallowed class claim, they should have been permitted to amend their claim; and (7) Manville waived its right to make its motion to disallow and expunge their claim. For the reasons set forth below, we hold that the bankruptcy court lacked jurisdiction to decide Manville's motion and that Manville's motion was not timely filed. We therefore decline to reach the other arguments advanced by appellants.

## BACKGROUND

### 1. The PD Trust

Manville is the world's largest manufacturer of asbestos. On August 26, 1982, facing unprecedented liability for claims filed by current and future victims of asbestos-related deaths and injuries, Manville filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code. 11 U.S.C. §§ 1101–1174 (1988); see In re Joint E. & S. Dist. Asbestos Litig.: In re Johns–Manville Corp., 129 B.R. 710, 751 (E. & S.D.N.Y.1991), vacated on other grounds, 982 F.2d 721 (1992), modified, 993 F.2d 7 (2d Cir.1993). Four years later, on December 22, 1986, the bankruptcy court entered an order confirming Manville's Second Amended and Restated Plan of Reorganization (the "Plan"). The Plan established two trusts. The Manville Personal Injury Settlement Trust was established to pay personal injury claims arising from exposure to asbestos. The Manville Property Damage Settlement Trust (the "PD Trust") was established to pay claims for property damage arising from asbestos removal.

The Plan provided that a claims resolution facility (the "PD Facility") would be created to resolve all asbestos-related property damage claims against Manville filed for payment by the PD Trust. The Plan defined "property damage claims" as

all Claims timely filed ... for damages arising or allegedly arising from the presence in buildings or other structures of asbestos (alone or as contained in asbestos-containing products), which was sold, supplied or produced, or allegedly sold, supplied or produced, by [Manville] prior to the Confirmation Date....

Section 10.1(A) of the Plan provides that, after confirmation of the Plan, the bankruptcy court shall retain jurisdiction "[t]o determine any and all objections to the allowance of Claims to the extent permitted by law (excluding Class 3 [i.e., property damage] Claims....)" (emphasis added).

The Confirmation Order provided that:

Except with respect to Class 3 [i.e., property damage] Claims and Class 4 Claims ... [Manville] may file within one hundred and twenty (120) days from the date of this Order any and all objections to the allowance of any Claim not heretofore objected to.... [I]n the event of a failure to do so, any objections to the allowance of the Claims affected thereby will be deemed waived.

(emphasis added). The Confirmation Order became final on October 28, 1988, after it was affirmed by this Court. See Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.), 843 F.2d 636 (2d Cir.1988).

According to the Claims Resolution Guidelines (the "PD Guidelines"), the PD Facility "provide[s] the exclusive method for the disposition and payment of [p]roperty [c]laims against the PD Trust as provided in the Plan." (footnote omitted). The PD Guidelines apply to "[d]eterminations as to the allowance and payment of [property] claims" and "are designed to provide a no-fault, non-litigated, low transaction cost method of effectuating the consensual settlement of [p]roperty [c]laims asserted against [Manville]." "Pursuant to the PD Guidelines, the PD Facility receives and reviews documentation of asbestos property damage claims, determines the allowed amounts of claims, and

makes distributions thereon from assets of the PD Trust." *State Gov't Creditors' Comm. for Property Damage Claims v. McKay (In re Johns–Manville Corp.)*, 920 F.2d 121, 123 (2d Cir.1990).

The PD Guidelines also set forth the procedure for processing and reviewing claims. All claims must be submitted on the PD Facility's standardized claim form and must include certain documentary evidence (e.g., proof of abatement costs) to substantiate the claim. If a claimant's documentation or claim form is incomplete, the PD Facility cannot evaluate the claim and must notify the claimant that he has sixty days to provide the missing information or his claim will be disallowed. A claimant whose claim has been disallowed by the PD Facility has the right to request that the PD Facility reconsider his claim, and if such reconsideration is denied, to submit the matter to binding arbitration.

### 2. The Hospitals' Claim

On July 16, 1984, the bankruptcy court issued a Bar Order requiring, *inter alia*, that all of Manville's creditors holding property damage claims file proofs of claim on or before October 31, 1984 (the "Bar Date"). Prior to the Bar Date, the bankruptcy court extended the Bar Date for certain property damage claims to January 31, 1985, and later, in response to specific requests by various claimants, further extended the Bar Date to March 1, 1985.

Prior to the applicable Bar Date, twenty proofs of claim that purported to assert property damage claims were filed on behalf of persons or entities executing the proof of claim form and/or on behalf of similarly situated named or unnamed persons and entities that did not timely file individual proofs of claim. One of these claims (No. 22,079) was filed by the Hospitals and purportedly presented the claims of hospitals that were "members of the American Hospital Association and the American Federation of Hospitals, and Intermountain Health Care, Inc. and IHC Hospitals, Inc. and their subsidiaries and affiliates." Subsequent to the Bar Date, the Hospitals amended their proof of claim and provided additional information regarding individual member hospitals, including their names, addresses and (in many cases) specific claims for damages.

On December 15, 1988, Manville moved to disallow and expunge these twenty claims, and the bankruptcy court held a hearing on the motion on September 16, 1991. In an order dated March 19, 1992, the bankruptcy court granted the motion with respect to all of these claims, including the Hospitals' claim. The bankruptcy court found that these claims were presented as class claims and held that they did not meet the criteria for class status articulated by Judge Lasker in *Iles v. LTV Aerospace & Defense Co. (In re Chateaugay Corp.)*, 104 B.R. 626, 629–30 (S.D.N.Y.1989), *appeal dismissed,* 930 F.2d 245 (2d Cir.1991) (per curiam). The district court affirmed the bankruptcy court's findings, and this appeal followed.

### DISCUSSION

### 1. Jurisdiction

■ A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization. *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.)*, 111 B.R. 457, 462 (Bankr. S.D.N.Y.1990); *see In re Aylesbury Inn, Inc.*, 121 B.R. 675, 677 (Bankr.N.D.N.Y. 1990); *see also A.R.E. Mfg. Co. v. United States (In re A.R.E. Mfg. Co.)*, 138 B.R. 996, 999 (Bankr.M.D.Fla.1992); *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc. (In re Allied Technology, Inc.)*, 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982). The bankruptcy court's post-confirmation jurisdiction therefore is defined by reference to the Plan.

■ Here, the Plan explicitly excepted objections relating to timely filed property damage claims from the post-confirmation jurisdiction of the bankruptcy court. In its opinion affirming the bankruptcy court's order, the district court made the following statement: "It is undisputed that the Hospital Claimants's purported claims are [property damage] Claims." Based on this statement and the fact that both parties concede that the Hospitals' claim was timely filed, the bankruptcy court did not have jurisdiction to entertain an application to disallow and expunge the Hospitals' claim after the Plan had been confirmed.

In affirming the bankruptcy court's decision that it retained jurisdiction over the Hospitals' claim, the district court held that the Plan's exclusion of property damage claims did not apply to "patently frivolous, incomplete, or late claims." We disagree with this holding. The language contained in section 10.1(A) of the Plan is plain and unambiguous. Any concerns regarding the filing of frivolous or incomplete property damage claims adequately are addressed by the PD Guidelines. Such claims no doubt will be screened out by the PD Facility and thus properly were outside the bankruptcy court's post-confirmation jurisdiction.

### 2. Timeliness of Manville's Motion

■ As an alternative basis for our decision, we hold that Manville's motion to disallow and expunge the Hospitals' claim also should have been denied because it was filed more than 120 days after the Confirmation Order was entered. Manville argues that the 120-day clock did not begin to run until after the Confirmation Order became final in October of 1988—when the last appeal had been exhausted. We reject this interpretation. Ordinarily, an order becomes final when it is entered, and it continues to be enforceable until it is reversed on appeal or until a stay is granted pending appeal, pursuant to Bankr.R. 8005. *See In re Century Inv. Fund VIII Ltd. Partnership*, 114 B.R. 1003, 1009 (Bankr.E.D.Wis.1990). Here, the bankruptcy court set the deadline for objecting at 120 days *from the date of the Confirmation Order* and not from the date the Confirmation Order became final on appeal. No stay was sought, and Manville offers no explanation as to why it failed to make its motion within 120 days after the Confirmation Order was entered or why it did not request a stay. Accordingly, its motion was not timely filed and should not have been considered.

### CONCLUSION

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with the foregoing.