In re ATLANTIC COMPUTER
SYSTEMS, INC., et al.,
Debtors.

PORTFOLIO LEASE FUNDING
CORPORATION, NO. 1,
Plaintiff,

v.

SEAGATE TECHNOLOGY,
INC., Defendant.

Bankruptcy No. 90 B 12117.
Adv. No. 93–9491A.

United States Bankruptcy Court,
S.D. New York.

Feb. 4, 1994.

Davis Polk & Wardwell (Maryellen E. Abely, of counsel), New York City, for debtors.

Kleinberg, Kaplan, Wolff & Cohen, P.C. (Norris D. Wolff, of counsel), New York City, for PLFC.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. (Whitton E. Norris, III, of counsel), Washington, DC, for Seagate Technology, Inc.

ABSTRACT OF JANUARY 19, 1994 BENCH RULING ON DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING

BURTON R. LIFLAND, Chief Judge.

This dispute involves a lessee's alleged failure to, *inter alia*, pay rent, return certain computer equipment (the "Equipment") or to otherwise perform under a certain lease (the "Lease") of such Equipment. The Lease was originally executed by Atlantic Computer Leasing Systems, Inc., as lessor ("Atlantic" or "Debtor"), and Seagate Technology, Inc., as lessee ("Seagate" or "Defendant"). Resolution of the motion before the Court requires analysis and consideration of a bankruptcy court's post-confirmation subject matter jurisdiction.

On July 5, 1990, Atlantic filed a voluntary chapter 11 petition and was continued in the management, operation and possession of its business and property as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (the "Code"). The Debtor sold to Portfolio Lease Funding Corporation No. 1 ("PLFC" or "Plaintiff"), pursuant to an auction process authorized by and held before this Court, a certain portfolio of computer equipment leases which included the Lease at issue here. The sale of this portfolio was approved by an order dated April 14, 1992. *See* April 14, 1992 Order Approving Portfolio Purchase Agreement (the "April 14 Order"). In accordance with this Court's ruling during the hearing on the sale of this portfolio the April 14 Order preserved and protected the rights of lessees who had objected, either by filing formal objections or through informal communications with the Debtor or its counsel, to this sale.

Atlantic's Joint Plan of Reorganization was confirmed by this Court on October 19, 1992 and became effective on December 23, 1992. On September 24, 1993, this Court entered a Final Decree closing Atlantic's case. The Final Decree provided that this Court retained jurisdiction "for all of the purposes set forth in the Confirmation Order," including the determination of all contested matters and adversary proceedings.

Through this adversary proceeding, PLFC seeks to channel the determination of all issues involving the Lease, including PLFC and Seagate's respective rights and obligations under the Lease, to this Court. PLFC also seeks to enjoin Seagate from prosecuting a California State Court action (the "California Action") which seeks a declaratory judgment that PLFC is bound by a prior agreement, made by Atlantic, to sell the Equipment to Seagate. Atlantic supports PLFC in this adversary proceeding and Atlantic's request to intervene was granted.

■ Seagate moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), as made applicable by Federal Rule of Bankruptcy Procedure 7012, to dismiss PLFC's complaint for lack of subject matter jurisdiction. PLFC has the burden to establish that this court has subject matter jurisdiction over this adversary proceeding. *World Travel Vacation Brokers, Inc. v. Bowery Savings Bank (In re Chargit, Inc.)*, 81 B.R. 243, 247 (Bankr.S.D.N.Y.1987) (*cited in In re Secured Equipment Trust*, 153 B.R. 409, 412 (S.D.N.Y.1993)); *see also In re Recticel*

*Foam Corp.,* 859 F.2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction"). It is appropriate to view the assertions made in PLFC's complaint as mere allegations, and the Court may consider materials and facts outside the four corners of the pleadings without converting this Rule 12(b)(1) motion into one for summary judgment. *Official Committee of Unsecured Creditors of Operation Open City, Inc. v. New York State Department of State (In re Operation Open City, Inc.),* 148 B.R. 184, 188 (Bankr.S.D.N.Y.1992) (citations omitted).

■ The underlying dispute is between *two non-debtor parties,* PLFC and Seagate, respectively, and largely revolves around whether Seagate has the right to purchase the Equipment at the conclusion of the Lease's term. As Atlantic's Joint Plan of Reorganization has been confirmed and substantially consummated, whatever property rights were held by the Debtor's estate prior to confirmation have either been vested in the Debtor, the creditors, the Debtor's parent corporation, or the Liquidating and Reserve Trusts (the "Trusts"), respectively, established under the Debtor's Joint Plan. *See* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."). Furthermore, confirmation and substantial consummation of the Debtor's Joint Plan means that this Debtor's estate no longer exists. *See Hillis Motors, Inc. v. Hawaii Automobile Dealers' Association,* 997 F.2d 581, 587 (9th Cir.1993); *U.S. v. Unger,* 949 F.2d 231, 233 (8th Cir.1991). Thus, this adversary proceeding, while it might affect the post-confirmation, liquidated Atlantic or its parent corporation (holder of the residue interest in the remaining undistributed cash held by the Trusts), cannot affect the Debtor's non-existent estate.

■ PLFC argues that this Court retains jurisdiction over this proceeding pursuant to the Debtor's confirmed Joint Plan of Reorganization. The Second Circuit has recently held that "a bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *Hospital and University Property Damage Claimants v. Johns–Manville Corporation (In re Johns–Manville Corp.),* 7 F.3d 32, 34 (2d Cir.1993). Although PLFC has asserted that this Court retains jurisdiction over this proceeding pursuant to section 9.1 of the Debtor's Joint Plan, PLFC has failed to specifically state which of section 9.1's nineteen separate subsections supports this argument. In this fashion, PLFC has failed to carry its burden.

■ The Debtor attempts to aid PLFC by pointing to the terms of the Confirmation Order, which provides, in pertinent part, that this Court retained jurisdiction over "the determination of all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in this Court on or initiated after the effective date of the Plan." The Second Circuit expressly recognized, however, that a bankruptcy court retains jurisdiction pursuant to the terms of the confirmed plan, *not* the confirmation order. *See Manville,* 7 F.3d at 34 ("The bankruptcy court's post-confirmation jurisdiction therefore is defined by reference to the Plan."). In *Manville,* the Second Circuit noted that while the Manville's Confirmation Order provided that Manville could file objections to certain Class 3 property damage claims within 120 days from the date that Confirmation Order became final, Manville's confirmed plan expressly provided that the bankruptcy court shall retain jurisdiction " '[t]o determine any and all objections to the allowance of Claims to the extent permitted by law (*excluding Class 3 [i.e. property damage] Claims . . . .*)' (emphasis added)." *Id.* at 33. In this manner, the Second Circuit expressly recognized that where there is a conflict between the retention of jurisdiction under a confirmed plan and a confirmation order, the plan, which has been voted on by creditors and has satisfied the dictates of section 1129 of the Code, controls. The Second Circuit's "alternative basis" for its decision, namely that Manville failed to object to the claims at issue within the time prescribed under Manville's Confirmation Order, in no way detracts from, or conflicts with, that case's aforementioned primary holding. *See id.* at 35.

■ Assuming, *arguendo*, that this proceeding falls within the purview of one of the subsections of section 9.1 of the Debtor's Joint Plan, *see, e.g.,* § 9.1(h), this Court may only exercise subject matter jurisdiction to the extent conferred by 28 U.S.C. § 1334(b). Section 1334(b) provides, in pertinent part, that: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district court, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." The district courts may "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district[,]" 28 U.S.C. § 157(a), and the District Court for the Southern District of New York has made such provision by reason of the "Standing Order of Referral of Cases to the Bankruptcy Judges of the District Court." (Ward, Acting C.J., July 10, 1984).

PLFC first argues that this adversary proceeding is "related to" the Debtor's chapter 11 case because if Seagate successfully prosecutes its claims, PLFC would assert a claim against the Debtor for distribution from the funds presently held by the Trusts. As the Second Circuit has explained, "[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' over the *bankruptcy estate.* If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court." *Publicker Industries, Inc. v. United States (In re Cuyahoga Equipment Corp.),* 980 F.2d 110, 114 (2d Cir.1992) (emphasis supplied) (citing *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 340–41 (2d Cir.1983) (Friendly, J.)) (other citations omitted). As previously noted, however, this adversary proceeding cannot affect the Debtor's estate because such entity neither presently exists nor has any rights in property.

The Second Circuit has stressed that the analysis of whether a proceeding is "related to" a case under title 11 must focus on the possible effect of that litigation upon a debtor's estate. For example, in the seminal *Turner* case, Judge Friendly, in considering the scope of the phrase "related to" in § 1334(b)'s "nearly identical" predecessor, § 1471(b), *Miller v. Kemira (In re Lemco Gypsum),* 910 F.2d 784, 787 (11th Cir.1990), noted that any funds recovered in the *Turner* action would have been collected by the debtor herself and would not have been turned over to the chapter 7 trustee. *Turner,* 724 F.2d at 341. Thus, the *Turner* proceeding was not related to the Debtor's chapter 7 case because that proceeding, regardless of its outcome, would not have affected that debtor's estate. *Id.* In similar fashion, because this Debtor's estate has ceased to exist by reason of the confirmation and substantial consummation of its Joint Plan of Reorganization, any finding of fact or conclusion of law made in this adversary proceeding could not have any effect upon the Debtor's extinguished estate. There is no dispute that unsecured claims have been satisfied under the terms of the Debtor's Joint Plan, and remaining funds are being upstreamed, through the Trusts, to the Debtor's corporate parent.

■ PFLC also argues that this adversary proceeding either "arises under" Title 11 or falls within this Court's ancillary jurisdiction because this proceeding is an action to enforce a prior order of this Court. *See* Plaintiff's Memorandum of Law at 8; *see also Wards Company, Inc. v. Jonnet Development Corp. (In re Lafayette Radio Electronics Corp.),* 761 F.2d 84, 92 (2d Cir.1985). As the parties are well aware, the April 14 Order provides that "all persons and other entities are enjoined from pursuing claims against the Purchaser with respect to any claims, pursuant to the Bulk Purchase Agreement[.]" April 14 Order at 8–9. PLFC alleges that Seagate has violated this provision of the April 14 Order by commencing the California Action. As previously noted, PLFC seeks to enjoin Seagate from prosecuting that Action.

The April 14 Order, however, also expressly states that "nothing contained herein shall affect the rights of any party who has made an objection to the assumption and assign-

ment that has not been resolved by and between Atlantic and the objecting party until such time as the objection is finally resolved, either by agreement of the parties or by further order of the this Court." April 14 Order at 8. In its Memorandum in Opposition to PLFC's Motion to Dismiss, the Debtor asserts that Seagate did not informally object to the sale, and points to the April 13, 1992 letter from Debtor's counsel, Davis Polk & Wardwell, to this Court (the "April 13 Davis Polk Letter" or "April 13 Letter").[1] This argument is not persuasive.

During the April 14, 1992 hearing, as previously noted, this Court ruled that parties who, during conversations with the Debtor or its counsel, had informally indicated their objections to the portfolio sale would be treated as having made formal objections to such sale. *See* Transcript of April 14, 1992 Hearing on Sale of Computer Lease and Equipment Portfolio at 102–04. The Debtor argues that Seagate should not be treated as having made an informal objection because Seagate is included in Part II, as opposed to Part I, of the April 13 Davis Polk Letter. The Debtor argues that only those parties listed in Part I of the April 13 Letter should be accorded the aforementioned protections under the April 14 Order. The April 13 Letter clearly indicates that the Debtors had received "objections to the motion" from those entities listed in Part I of the April 13 Letter. The April 13 Letter continues in Part II to state that "the following *objections* to the factfinding procedure have not been resolved," and indicates, within Part II, that Seagate has "made a buy-out proposal." April 13 Letter at 6 & 8 (emphasis supplied).

An examination of the descriptions of the parties' respective objections leads to the conclusion that the April 13 Letter's bifurcation of parties into Parts I and II, respectively, is not controlling with respect to whether a party is accorded the aforementioned pro-

tections under the April 14 Order. Certain parties listed under Part I are described as largely having the same objection that Seagate raised. For example, Bayh, Connaughton, Fensterheim & Malone are described as having "made an offer to purchase the equipment," and Gurwin Jewish Geriatric Center is listed as having "made a buy-out proposal." April 13 Letter at 3 & 4. In addition, a party which had apparently objected to the factfinding procedure is listed in Part I, and according to the Debtor, would be afforded the protections of the April 14 Order, while those parties listed under Part II's heading of "the following objections to the factfinding procedure have not been resolved," would not enjoy such protections. *See* April 13 Letter at 5. The objection of Milbank, Tweed, Hadley & McCloy is listed in Part I, and described as follows: "Lessee objects to the factfinding procedure to the extent that its objections are not resolved prior to the hearing."

In light of this Court's understanding and ruling that all parties who made informal objections during communications with the Debtor would be deemed to have made formal objections, Seagate is entitled to .the protections granted to objecting parties under the April 14 Order. Therefore, because this adversary proceeding does not require enforcement of the April 14 Order, it neither arises under Title 11 nor falls within this Court's ancillary jurisdiction. *Cf. General American Corp. v. Merrill Lynch Commodities, Inc. (In re Ross)*, 64 B.R. 829, 833–34 (Bankr.S.D.N.Y.1986) (discussing the Second Circuit's holding in *Lafayette* that the bankruptcy court had jurisdiction because that proceeding involved enforcement of a prior order of the bankruptcy court.)

In sum, PLFC has failed to demonstrate that this adversary proceeding involves the identification of any property of the Debtor's estate, would affect such extinguished estate

---

**1.** A condition of the portfolio sale, which included upwards of 2,500 leases, was that the order approving such sale would not bind any objecting lessee until the objection was resolved, either by agreement of the parties or by further order of this Court. On the day prior to the sale hearing, Debtor's counsel submitted the lengthy April 13 Letter, indicating the status of lessee objections

and disputes. As discussed, *infra,* the April 13 Letter also attempted to categorize such objections. At the hearing, the parties agreed to the aforementioned protocol pursuant to which informally communicated objections were accorded the same status as formal objections to the portfolio sale.

or requires enforcement of this Court's April 14 Order. *Cf. Lemco Gypsum,* 910 F.2d at 789. There is no reason for this Court's jurisdiction to linger, *see id.,* and the parties are free to resolve this state law contract dispute in the state courts. *See, e.g., Elscint, Inc. v. First Wisconsin Financial Corporation (In re Xonics),* 813 F.2d 127, 131 (7th Cir.1987). ("The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's [sic] assets. It extends no further than its purpose.")

Therefore, in view of the foregoing, Seagate's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is granted.