16-3282-bk

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of August, two thousand seventeen.

PRESENT:   REENA RAGGI,
           RAYMOND J. LOHIER, JR.,
                   *Circuit Judges*,
           JOAN M. AZRACK,
                   *District Judge.*[*]
-----------------------------------------------------------------------
In re RELATIVITY FASHION, LLC,

                   *Debtor*,

NETFLIX, INC.,
                   *Appellant*,

              v.                                    No. 16-3282-bk

RELATIVITY MEDIA, LLC, RYAN KAVANAUGH, as
Plan Co-Proponent,[†]
                   *Appellees.*
-----------------------------------------------------------------------

---

[*] Judge Joan M. Azrack, of the United States District Court for the Eastern District of New York, sitting by designation.

[†] The Clerk of Court is directed to amend the case caption as set forth above.

APPEARING FOR APPELLANT:  STEPHEN R. MICK, Barnes & Thornburg LLP, Los Angeles, California (Tonia Ouellette Klausner, Wilson Sonsini Goodrich & Rosati PC, New York, New York, *on the brief*).

APPEARING FOR APPELLEES:  TODD R. GEREMIA (Richard L. Wynne, Bennett L. Spiegel, *on the brief*), Jones Day, New York, New York, *for* Relativity Media, LLC; Van C. Durrer, II, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, *for* Ryan Kavanaugh.

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*; Michael E. Wiles, *Bankruptcy Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 19, 2016, is AFFIRMED.

Netflix, Inc. ("Netflix") appeals from a judgment of the district court, which affirmed an order of the United States Bankruptcy Court for the Southern District of New York granting debtor Relativity Media, LLC's ("Relativity's") 11 U.S.C. § 1142(b) motion to enforce its Chapter 11 reorganization plan (the "Plan") and denying Netflix's motion to compel arbitration.[1]  On appeal, Netflix contends that the parties' 2010 licensing agreement (the "License Agreement"), as amended by two contracts assigning royalty payments to third-party lenders (the "Notices of Assignment," or "NOAs"), authorized it to distribute two of Relativity's films through its video-streaming service before those films

---

[1] Netflix's contention that Relativity Media, LLC's appearance is "improper" because Netflix's contracts are with a related Relativity entity, Appellant's Br. 1 n.1, is asserted only in a footnote, and accordingly, we decline to consider it.  *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012).

were released in theaters. Netflix challenges the bankruptcy court's conclusion that (1) it possessed jurisdiction in spite of the dispute's post-confirmation status and the NOAs' arbitration clauses; and (2) Netflix should be enjoined from streaming the films prior to their theatrical release based upon (a) *res judicata*, (b) judicial estoppel, and (c) the terms of the License Agreement and the NOAs. On plenary review of a decision of a district court functioning as an intermediate appellate court in a bankruptcy case, we review the bankruptcy court's legal conclusions *de novo* and factual findings only for clear error. *See In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 308 (2d Cir. 2014). In so doing, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Bankruptcy Jurisdiction

Netflix argues that the bankruptcy court lacked the statutory and constitutional authority to adjudicate the parties' dispute, and erred in denying its motion to compel arbitration. We disagree and conclude that the bankruptcy court's exercise of jurisdiction was proper.

a.    "Core" Bankruptcy Jurisdiction

Under the Bankruptcy Code, "[b]ankruptcy courts retain comprehensive power to resolve claims and enter orders or judgments" in "core proceedings," *i.e.*, cases "'arising under title 11, or arising in a case under title 11.'" *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (quoting 28 U.S.C. § 157(b)), *cert. denied*, 137 S. Ct. 1813 (2017). This Court has ruled that "core proceedings should be given a broad

3

interpretation that is close to or congruent with constitutional limits." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) (internal quotation marks omitted).

Netflix challenges the bankruptcy court's jurisdiction to adjudicate this dispute whether it is core or non-core because it addresses an alleged post-confirmation contractual breach. This court, however, has held that reorganization plans may provide for post-confirmation jurisdiction, as Relativity's did. *See In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993) (explaining that bankruptcy court retains post-confirmation jurisdiction in Chapter 11 proceeding "to the extent provided in the plan of reorganization"); *see also* 11 U.S.C. § 1142(b) (authorizing bankruptcy court to compel parties to perform acts "necessary for the consummation of the plan"). In such circumstances, core status depends on "whether the contract is antecedent to the reorganization petition" and "the degree to which the proceeding is independent of the reorganization." *In re U.S. Lines, Inc.*, 197 F.3d at 637. The latter inquiry turns on whether the proceeding is "unique to or uniquely affected by the bankruptcy proceedings," or "affect[s] a core bankruptcy function," such as "administering all property in the bankrupt's possession." *Id.* (internal quotation marks and alteration omitted). Thus, we have identified core status where a post-confirmation dispute over "major [pre-petition] insurance contracts" was "bound to have a significant impact on the administration of the estate," *id.* at 638, and where a post-confirmation dispute over a pre-petition lease "involved an issue already before the bankruptcy court as part of its consideration of [the

4

party's] claim against the estate," *In re Petrie Retail, Inc.*, 304 F.3d 223, 231 (2d Cir. 2002).

As in *U.S. Lines* and *Petrie Retail*, the impact of the parties' dispute on core bankruptcy functions in Relativity's reorganization renders this proceeding core. During Relativity's bankruptcy proceedings, Netflix filed a proof of claim and objected to the proposed plan of reorganization on the ground, *inter alia*, that projected delays in the theatrical release dates of Relativity's films would create corresponding delays in Netflix's right to stream those films at a later date. Relativity's confirmed reorganization plan implicitly incorporated Netflix's understanding of the importance of pre-streaming theatrical release, providing relief to certain creditors through anticipated revenues from the films' theatrical releases. Testimony at the post-confirmation hearing before the bankruptcy court established that Netflix's proposed pre-release streaming of films would effectively destroy the revenue streams anticipated by the Plan. Accordingly, the instant dispute is a "core" proceeding over which the bankruptcy court was entitled to exercise jurisdiction because Netflix's post-confirmation change of position would have both had a "significant impact on the administration of the estate," *In re U.S. Lines, Inc.*, 197 F.3d at 638, and undercut the creditor relief provided by the Plan, *see In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders.").

5

b.     Statutory Authority

Netflix nevertheless disputes the bankruptcy court's statutory authority to authorize partial assumption of an executory contract.  The point merits little discussion because Netflix identifies no portion of the License Agreement or the NOAs that was nullified, and the record reflects that Relativity assumed the agreements in their entirety during bankruptcy proceedings.  *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (explaining that 11 U.S.C. § 365 requires bankruptcy court to ensure that when reorganized debtor assumes contract, it provides counterparty with full benefit of bargain). Netflix disputes how these agreements should be interpreted, but that does not undermine the bankruptcy court's statutory authority.

c.     Constitutional Authority

We also reject Netflix's constitutional challenge to the bankruptcy court's exercise of jurisdiction in light of *Stern v. Marshall*, 564 U.S. 462 (2011).  In *Stern*, the Supreme Court "invalidated the portion of the Bankruptcy Code authorizing bankruptcy judges to enter final judgments on claims and counterclaims . . . which are exclusively based upon some legal right guaranteed by state law."  *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 94 (2d Cir. 2014).  That holding, however, "was a narrow one . . . replete with language emphasizing that the ruling should be limited to the unique circumstances of that case," *In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012), and not addressing actions that "stem[] from the bankruptcy itself" or that would "necessarily be resolved in the claims allowance process," *Stern v. Marshall*, 564 U.S. at 499.  *Stern* therefore did not

6

address the circumstance presented here, where the bankruptcy court acted only to enjoin Netflix from advancing arguments inconsistent with the objections it raised in Relativity's bankruptcy proceedings. Enjoining litigation that interferes with bankruptcy proceedings has "historically been the province of the bankruptcy courts," and is, therefore, distinguishable from the "entry of the final tort judgment at issue in *Stern*." *In re Quigley Co., Inc.*, 676 F.3d at 52.

d. Denial of Motion To Compel Arbitration

As for the denial of Netflix's motion to compel arbitration, a bankruptcy court may retain jurisdiction over a core proceeding in spite of a mandatory arbitration provision if, in the exercise of its discretion, it concludes that "any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing [the] arbitration clause." *In re U.S. Lines, Inc.*, 197 F.3d at 640. Relevant considerations include "the goal of centralized resolution of pure[] bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (internal quotation marks omitted). "If the bankruptcy court has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding." *Id.* at 107 (internal quotation marks omitted).

Here, the bankruptcy court carefully weighed the "competing bankruptcy interests and arbitration interests" and concluded that granting Netflix's motion to compel

7

arbitration would permit a "collateral attack" on the "factual findings and distributions of property" underlying the confirmed Plan, which would cause "key" aspects of the Plan to "collapse[]." ASA21. Such a finding was not clearly erroneous, particularly in light of credited hearing testimony that permitting Netflix to stream films prior to their theatrical release dates would dramatically reduce box-office revenues integral to the Plan. Thus, we identify no error in its denial of Netflix's motion to compel arbitration.

2.    Injunction Against Pre-Release Streaming

Netflix argues that the bankruptcy court erred in basing its injunction decision on (1) *res judicata*, (2) judicial estoppel, and (3) the parties' contractual agreements. Because we identify no error in the third conclusion, we need not address the first two.

Netflix argues that the bankruptcy and district courts erred in concluding that it was contractually obliged to defer its streaming of Relativity's films until their release dates. In support, it points to the NOAs. While those agreements state that Netflix's payment for Relativity's films is "due and payable in full" only on "the later of (1) Delivery [of the film] and (2) the earlier of (I) one hundred-twenty (120) days after the earlier of (a) release of the Film for Home Video within the Territory or (b) the date of first Non-Premium VOD exploitation of the Film or (II) twelve (12 months) after the initial theatrical release of the Film in the Territory," AA50, they go on to state that

> if the date set forth in (2) above has not occurred on or before June 17, 2016,[2] then (y) such date shall be deemed to occur on June 17, 2016, and (z) the first Start Date for the first Availability Period for the Film shall be the earlier of

---

[2] The only distinction between the NOAs relevant to this appeal is that the outside "Start Date" was June 17, 2016, for one film and June 30, 2016, for the other.

8

(A) the date set forth in (y) above and (B) the date prescribed in the Distribution Agreement.

AA50. Netflix argues that, under this language, Relativity's delivery of the films to Netflix, and its failure to release the films in theaters on or before June 17, 2016, makes that date the applicable "Start Date" for streaming.

The NOAs cannot be read, however, apart from the License Agreement to which they pertain. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008) ("[A]ll writings that are part of the same transaction are interpreted together." (quoting Restatement (Second) of Contracts § 202(2) (2008)). Section 5.6 of that agreement states that Netflix "shall . . . enter into all agreements reasonably requested by Relativity or any financial institution . . . provided such agreements are of a nature which are customarily entered into in connection with comparable credit facilities and shall not result in any additional material obligations on Netflix's part." AA15. Relying on this provision, Relativity and its creditor CIT Bank, N.A., asked Netflix to adjust the NOAs' anticipated "Start Dates" to reflect anticipated delays in the films' theatrical releases. The plain language of § 5.6 obligated Netflix to do so if such accommodation was customary in the industry and did not impose additional material obligations on Netflix.

As to the first point, the bankruptcy court credited testimony from industry professionals that it was customary for content distributors such as Netflix to consent to extensions of time to accommodate delays in a film's theatrical release date. We identify no clear error in this factual finding. As to the second, Netflix's own witness averred that it was a "material requirement" of the parties' agreement that "the films provided must be

9

first run, theatrically released films." ASA68. Indeed, as the bankruptcy court observed, the royalties due from Netflix under the License Agreement were not even calculable absent theatrical release because that agreement provided for Netflix's license fee to be based on domestic box office receipts. *See* License Agreement Section 5.1, AA13 (explaining that license fee was equal to "DBO Calculation"); Schedule A, AA30 ("DBO . . . shall mean the domestic . . . theatrical box office performance of a Title . . . ."). Thus, because the requested accommodation imposed no additional material obligation on Netflix, the bankruptcy court correctly concluded that Netflix was contractually obliged to accede to the request to delay its own streaming start date until the films at issue were theatrically released.

Accordingly, we conclude that the bankruptcy court did not err in enjoining Netflix from asserting a right to stream Relativity's films prior to their theatrical release dates.

3.    Conclusion

We have considered Netflix's other arguments and conclude that they are without merit or moot. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10