# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of May, two thousand twenty-three.

PRESENT:
> AMALYA L. KEARSE,
> BARRINGTON D. PARKER,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

IN RE:   1934 BEDFORD LLC,

> *Reorganized Debtor.*

_____

1934 BEDFORD LLC, NIKOL VON LAVRINOFF,

> *Appellants,*

v.                                                                            No. 22-851

LOEB AND LOEB LLP,

> *Appellee.*\*

_____

---

\*  The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Appellants:**                       JOSEPH J. HASPEL, Joseph J. Haspel, PLLC, Middletown, NY.

**For Appellee:**                      WILLIAM M. HAWKINS (Schuyler G. Carroll, Noah Weingarten, *on the brief*), Loeb & Loeb LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

1934 Bedford LLC ("Bedford") and Nikol Von Lavrinoff, Bedford's sole equity holder, appeal from the district court's affirmance of the bankruptcy court's order reopening this previously closed bankruptcy case and directing the payment of attorneys' fees to Loeb & Loeb LLP ("Loeb") for post-effective-date services. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

In August 2019, Bedford's creditors filed an involuntary petition against it under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* After the case was "stalled" for nearly a year "due to ongoing and protracted disagreements,"

2

Bedford sought the bankruptcy court's approval to retain Loeb as its substitute counsel to "right the course" of the case. J. App'x at 647, 650. The retention application – signed by Von Lavrinoff – disclosed that Loeb would bill at "$675–$1,200 for partners, $485–$770 for associates, and $260–$440 for paralegals." *Id.* at 575. Von Lavrinoff also stated in the application that he believed "Loeb's hourly rates and terms of engagement" to be "appropriate, fair[,] and reasonable." *Id.* Without objection, the bankruptcy court approved the retention application.

On June 26, 2020, the bankruptcy court entered an order (the "Confirmation Order"), confirming Bedford's plan of reorganization (the "Plan"). The Plan contemplated that Bedford would sell its assets and use the majority of the sale proceeds – approximately $19 million – to pay its largest secured lender (the "Mortgagee"). Under the Plan, Loeb was required to hold approximately $2.25 million of the sale proceeds in escrow (the "Escrow") representing:

> (i) $1,704,896 for unpaid default interest for the period August 30, 2018 through August 2, 2019[;] (ii) $250,000 for estimated Mortgagee legal fees through June 26, 2020[;] (iii) $200,000 for a legal fee reserve for future litigation by [Bedford] or its successors against the Mortgagee[;] (iv) $75,000 for a legal fee reserve for litigation of [Bedford]'s objection to the Mortgagee's [c]laim[;] and (v) $20,459 for an interest reserve through July 13, 2020.

*Id.* at 552. The Plan also provided that Loeb, as the escrow agent, may "release . . . funds [held in the Escrow] upon an order of the [bankruptcy court] directing such funds' release." *Id.* at 553; *see also id.* at 563 ("Funds held or reserved pursuant to the Plan shall be held in the attorney escrow account at Loeb . . . . Loeb . . . shall only be authorized to release any of such funds upon an order of the [bankruptcy court].").  Under the Plan, the bankruptcy court retained jurisdiction after confirmation over "all matters arising under, arising in, or relating to" the bankruptcy case, including "to hear and determine all requests for compensation and/or reimbursement of expenses which may be made." *Id.* at 564–65.

After Bedford closed its asset sale for approximately $27 million, the Plan became effective on June 29, 2020. Pursuant to the Plan, approximately $19 million was distributed to the Mortgagee, approximately $1.6 million was disbursed to Von Lavrinoff, and approximately $2.25 million was deposited into the Escrow. The remaining proceeds from the asset sale were paid to various other creditors. In light of these payments, the Escrow became "the only . . . remaining asset of [Bedford]." *Id.* at 161. On Loeb's application, the bankruptcy court entered a final decree closing the chapter 11 case on September 28, 2020,

4

concluding that "the Plan ha[d] been substantially consummated" and the "chapter 11 case [was] fully administered." *Id.* at 350.

The dispute at issue arose in December 2020 when Loeb moved the bankruptcy court to reopen the case and authorize the payment from the Escrow for services it provided to Bedford between the Plan's effective date and the closing of the case.[1] Over Bedford's objection, the bankruptcy court reopened the case and authorized $93,384.10 of the $143,482.60 in fees sought by Loeb to be paid from the Escrow. The bankruptcy court explained that the $50,098.50 reduction accounted for time entries that were "duplicative," "imprudent," or related solely "to the defense of the fee application." *Id.* at 502–03. Bedford then appealed to the district court.

Before the district court, Bedford argued that the bankruptcy court (1) lacked subject-matter jurisdiction to reopen the bankruptcy case and order the payment for Loeb's post-effective-date services, and (2) even if it had subject-matter jurisdiction to order the payment, the bankruptcy court abused its

---

[1] Loeb's motion also sought payment for the post-effective-date services rendered by Bedford's accountant, which the bankruptcy court granted on January 8, 2021. That decision is not at issue in this appeal.

5

discretion by failing to apply the lodestar method in evaluating Loeb's post-effective-date fees. The district court affirmed, explaining that the bankruptcy court had jurisdiction over the parties' dispute because the Plan provided for the bankruptcy court's retention of jurisdiction over "all requests for compensation" and the disputed issues had a "close nexus" to the Plan. Sp. App'x at 16, 19. The district court also concluded that the bankruptcy court did not abuse its discretion in approving Loeb's fees, since it reviewed Loeb's detailed summary of its time entries and made appropriate reductions to the fees requested. This appeal followed.

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decision." *In re Lehman Bros., Inc.*, 808 F.3d 942, 946 (2d Cir. 2015) (internal quotation marks omitted). In doing so, we review de novo the bankruptcy court's determination that subject-matter jurisdiction exists, *see In re Motors Liquidation Co.*, 829 F.3d 135, 152 (2d Cir. 2016), and review for abuse of discretion the bankruptcy court's "award of attorney['s] fees and costs," *In re TPG Troy, LLC*, 793 F.3d 228, 235 (2d Cir. 2015); *see also In re Bayshore Wire Prod. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000); *Bernheim v. Damon & Morey, LLP*, No.

6

06-3386, 2007 WL 1858292, at *1 (2d Cir. June 28, 2007). We address each of Bedford's arguments in turn.

## I. Subject-Matter Jurisdiction

Bedford argues that the bankruptcy court had no jurisdiction to reopen the case and order the payment for Loeb's post-effective-date services from the Escrow because the issues presented "had no nexus to the Plan." Bedford Br. at 15. But as a threshold matter, although other circuits have concluded that post-confirmation bankruptcy proceedings must have a "'close nexus' to the confirmed bankruptcy plan," we have "yet to adopt the close[-]nexus test in [any] published opinion." *In re Mosdos Chofetz Chaim Inc.*, No. 22-33, 2023 WL 105715, at *3 (2d Cir. Jan. 5, 2023). As we have held, bankruptcy courts in this Circuit may exercise post-confirmation jurisdiction if the exercise of jurisdiction is (1) "provided in the plan of reorganization," *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993), and (2) necessary "to effectuate a plan of reorganization," *Reese v. Beacon Hotel Corp.*, 149 F.2d 610, 611 (2d Cir. 1945). We have also held that a bankruptcy court's exercise of post-confirmation jurisdiction is particularly appropriate for the court "to interpret and enforce its own orders" and to resolve "disputes . . . over a bankruptcy plan of reorganization." *Motors Liquidation*, 829

7

F.3d at 153; *see also Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010); *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005).

In this case, the bankruptcy court's exercise of its post-confirmation jurisdiction met these standards. For starters, the Plan expressly provided that the bankruptcy court retained jurisdiction after confirmation "to hear and determine all requests for compensation and/or reimbursement of expenses" that "ar[ose] under, ar[ose] in, or relat[ed] to the . . . [b]ankruptcy [c]ase." J. App'x at 564–65. The crux of the parties' dispute, in turn, concerned the compensation for Loeb's services provided in the bankruptcy proceeding between the effective date of the Plan and the closing of the case. Specifically, Loeb sought compensation for conducting "claims evaluation, resolution[,] and distributions"; preparing and filing "papers to obtain the [bankruptcy court]'s approval of [Bedford]'s settlement with [the Mortgagee]"; and maintaining "appropriate reserves for pending claims and expenses" – all in connection with Bedford's bankruptcy case. J. App'x at 161–62. The bankruptcy court therefore properly

8

exercised jurisdiction it retained under the Plan when it ordered the payment for Loeb's post-effective-date services.[2]  *See Johns-Manville*, 7 F.3d at 34.

Moreover, the bankruptcy court's retention of jurisdiction was "requisite to effectuate [the] [P]lan."  *Reese*, 149 F.2d at 611.  The Plan required Loeb to hold a portion of the asset-sale proceeds in the Escrow for certain post-confirmation legal fees and interest payments.  Under the Plan, Loeb may "release any . . . funds" held in the Escrow only "upon an order of the [bankruptcy court] directing such funds' release."  J. App'x at 553; *see also id.* at 563 ("Funds held or reserved pursuant to the Plan shall be held in the attorney escrow account at Loeb . . . . Loeb . . . shall only be authorized to release any of such funds upon an order of the [bankruptcy court].").  The bankruptcy court's retention of its post-confirmation jurisdiction was therefore "requisite to effectuate" the Plan, since Loeb was required to seek the bankruptcy court's approval before it could make any disbursement from the Escrow.  *Reese*, 149 F.2d at 611.

---

[2] Bedford conclusorily argues that Loeb's services at issue were "outside the Plan," and thus, unrelated to the chapter 11 case.  Bedford Br. at 7.  But aside from the fact that the time entries submitted by Loeb all concern Bedford's bankruptcy proceeding, the Plan also specifically contemplated that Loeb, as the "[d]ebtor's counsel," would assist with the execution and delivery of "all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan," J. App'x at 560, and act as the "disbursing agent" for "[f]unds held or reserved pursuant to the Plan" after confirmation, *id.* at 563.

9

Bedford nonetheless contends that "there was no requirement for a [b]ankruptcy[-][c]ourt order to disburse the Escrow" and that "the Confirmation Order recognized that post-confirmation [legal] fees would not be paid by property of the estate." Bedford Br. at 8, 16. These arguments are belied by the express terms of the Plan and Confirmation Order. As discussed, the Plan provided that Loeb was "only . . . authorized to release . . . funds [held or reserved pursuant to the Plan] upon an order of the [bankruptcy court]," J. App'x at 563, and the Confirmation Order stated that Bedford, as the reorganized debtor, was "authorized to pay compensation for professional services rendered in the ordinary course" after the effective date of the Plan, *id.* at 536. The parties' disputes over the Escrow squarely concerned the "interpret[ation] and enforce[ment]" of "a bankruptcy plan of reorganization" and the bankruptcy court's "own order[]," which we have consistently held to be within a bankruptcy court's post-confirmation jurisdiction.[3] *Motors Liquidation*, 829 F.3d at 153; *see also*

---

[3] Because, as part of Bedford's settlement with the Mortgagee, the bankruptcy court directed Loeb to disburse to Bedford "$710,229.50, which represent[ed] the balance of the Escrow," Bedford argues for the first time in its reply brief that it was unnecessary for the bankruptcy court to reopen the case, exercise jurisdiction over the present dispute, and issue "a further order . . . for the release or termination of the Escrow." Reply Br. at 3 (quoting Bankr. Ct. Doc. No. 294 (the "Settlement Order") at 2). But it is undisputed that, after "[t]he balance of $710,229.50 was

10

*Baker*, 613 F.3d at 352; *Millenium*, 419 F.3d at 96. Accordingly, we conclude that the bankruptcy court had subject-matter jurisdiction to reopen the case and order the payment for Loeb's post-effective-date legal fees from the Escrow.

## II. Loeb's Post-Effective-Date Fees

Bedford next argues that the bankruptcy court abused its discretion by failing to apply the lodestar method in evaluating Loeb's post-effective-date fees. We again disagree. Bedford identifies no binding authority requiring a bankruptcy court to apply the lodestar method, and we are not aware of any. Instead, the Bankruptcy Code provides that the bankruptcy court shall "tak[e] into account all relevant factors" when awarding fees. 11 U.S.C. § 330(a)(3). Here, the bankruptcy court properly considered the relevant factors in awarding attorney's fees to Loeb. For instance, the bankruptcy court reviewed a summary chart listing "each time entry" that Loeb was "defend[ing]." J. App'x at 500. It also "made certain reductions to the fees requested," *id.* at 501, to account for

---

distributed" to Bedford pursuant to the Settlement Order, an additional $138,511.09 remained in the Escrow. J. App'x at 160–61 & n.2. Although Bedford insists that the express terms of the Settlement Order obligate Loeb to release the remaining funds to Bedford, this argument, again, concerns the "interpret[ation] and enforce[ment]" of the bankruptcy court's "own order[]," over which the bankruptcy court may exercise jurisdiction post-confirmation. *Motors Liquidation*, 829 F.3d at 153.

11

"entries that it [found] were duplicative or" were "[im]prudent," *id.* at 502. Moreover, pursuant to *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015), the bankruptcy court also disallowed any fees "related to the defense of the fee application," *id.* at 503. On this record, we cannot conclude that the bankruptcy court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, . . . or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted).

We have considered Bedford's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court